**Bernard G. RIETH**

v.

**The UNITED STATES.**

No. 395–64.

United States Court of Claims.
July 14, 1972.

———◆———

Thomas H. King, Washington, D. C., attorney of record, for plaintiff. Brian C. Flynn, Bath, N. Y., of counsel.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. General Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, LARAMORE Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

OPINION

PER CURIAM:

In this suit plaintiff challenges the action of the United States Air Force by which his records were corrected in November 1958, to show that he was discharged in September 1953, with a 20 percent permanent physical disability rating, with entitlement to severance pay benefits, rather than with at least a 30 percent permanent physical disability rating, to which he claims entitlement with corresponding disability retirement pay under the Career Compensation Act of 1949.[1]

The facts, detailed in the accompanying findings, may be summarized as follows:

On September 7, 1953, plaintiff was physically examined by the Air Force. The medical report noted certain physical defects as a result of wounds which he sustained as a pilot in World War

1. Section 402(b) of the Career Compensation Act of 1949, 63 Stat. 802, 817, 37 U.S.C. § 272(b) (1952 ed.), provides as follows:

"Upon a determination by the Secretary concerned (1) that a member of a Regular component of the uniformed services entitled to receive basic pay, or a member of a Reserve component of the uniformed services entitled to receive basic pay who has been called or ordered to extended active duty for a period in excess of thirty days, is unfit to perform the duties of his office, rank, grade, or rating, by reason of physical disability incurred while entitled to receive basic pay; (2) that such disability is not due to the intentional misconduct or willful neglect of such member and that such disability was not incurred during a period of unauthorized absence of such member; (3) that such disability is 30 per centum or more in accordance with the standard schedule of rating disabilities in current use by the Veterans' Administration; (4) that such member has completed at least eight years of active service as defined in section 282 of this title; and (5) that accepted medical principles indicate that such disability may be of a permanent nature, the name of such member shall be placed upon the temporary disability retired list of his service by the Secretary concerned and such members shall be entitled to receive disability retirement pay as prescribed in subsection (d) of this section: *Provided*, That if condition (5) above is met by a finding that such disability is of a permanent nature, such member may be retired by the Secretary concerned and, upon retirement, shall be entitled to receive disability retirement pay as prescribed in subsection (d) of this section: *Provided further*, That if condition (3) above is not met because the disability is determined to be less than 30 per centum, the member concerned shall not be eligible for any disability retirement provided in this section, but may be separated for physical disability from the service concerned and upon separation shall be entitled to receive disability severance pay as prescribed in section 273 of this title: *And provided further*, That regardless of the percentage of disability determined to have been incurred, if condition (4) above is not met because the member concerned has completed less than eight years of active service as defined in section 282 of this title at the time he would otherwise have been retired pursuant to this subsection, the member concerned shall not be eligible for any disability retirement provided in this section, but may be separated for physical disability from the service concerned and upon separation shall be entitled to receive disability severance pay as prescribed in section 273 of this title."

II. He was, however, on September 16, 1953, relieved from active duty as the result of a reduction-in-force program, but not by reason of physical disability.

On January 10, 1955, the Veterans Administration awarded plaintiff a disability rating under the VA Diagnostic Code as follows:

20% Scars, shell fragment wounds, left thigh.

10% Scars, shell fragment wounds, left leg.

10% Scars, left hip, left knee, ankle, right shoulder and arm.

10% Paralysis, mild, common peroneal nerve.

Combined rating 40% from September 17, 1953.

On February 25, 1958, the Veterans Administration amended plaintiff's disability rating as follows:

20% Paralysis, incomplete, common peroneal nerve, left, moderate.

10% Wound, MG XIII, left, moderate.

10% Wound, MG XI, moderate, right.

10% Scar, right shoulder, with retained foreign body.

0% Scars, left lower extremity.

0% Scars, right upper extremity.

Combined rating 50% from December 30, 1957.

On November 14, 1958, the Assistant Secretary of the Air Force approved a recommendation of the Air Force Board for the Correction of Military Records, pursuant to which plaintiff's records were corrected to show that he was discharged in September 1953, by reason of physical disability with entitlement to severance pay benefits, and with a 20% disability rating under the VA Diagnostic Code consisting of 10% for paralysis, external popliteal nerve,[2] left, mild; and 10% for muscle injury, left, moderate.

In this court plaintiff contends that he was entitled to be rated by the Air Force for scars and other defects, rated by the Veterans Administration, but which the Air Force did not rate because both the Surgeon General and the Correction Board found that they did not contribute to plaintiff's unfitness.

On October 15, 1970, after the parties had argued before the court their exceptions and briefs in response to the report filed August 27, 1969, by the late Commissioner Richard Arens denying the plaintiff's petition for military disability retirement pay, the court ordered the case remanded to a trial commissioner for further proceedings to determine the "administrative interpretation by the Air Force (Air Force Board for the Correction of Military Records and Air Force Physical Evaluation Boards) of Air Force Manual 35–4, par. 17a(1) and (2), since its promulgation in 1952, as that interpretation bears on the issue in this case."

The case was then referred to Trial Commissioner C. Murray Bernhardt with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on January 19, 1972. Exceptions were filed by both parties and the case has been resubmitted to the court on the briefs of the parties and oral argument of counsel. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, it hereby adopts the same, together with the foregoing and together with the first twenty (20) findings, those made by Commissioner Arens, with a change in finding 20, as the basis for its judgment in this case, as hereinafter set forth. Therefore, it is concluded that plaintiff is entitled to recover and judgment is entered for plaintiff in accordance with this opinion with the amount of recovery to be determined pursuant to Rule 131(c).

2. The common peroneal nerve referred to by the Veterans Administration is the same as the external popliteal nerve referred to by the Air Force.

## OPINION OF COMMISSIONER

BERNHARDT, Commissioner: Pursuant to the order of remand further testimony, exhibits and briefs were received, on the basis of which it is concluded that the Correction Board was procedurally remiss in failing to announce a rating for the plaintiff's scar on his right shoulder with foreign body retained, that the said defect was properly ratable at 10 percent under the VA Schedule for Rating Disabilities, 38 C.F.R., and that with such addition to the 20 percent disability recommended by the Correction Board, the plaintiff is entitled to disability retirement pay for 30 percent disability under Section 402 (b) of the Career Compensation Act of 1949, 63 Stat. 802, 817, 37 U.S.C. § 272 (b).

Paragraph 17 a and b of AFM 35–4, set forth in finding 18,[1] provide as follows:

17. Recommended Findings

a. Determination of Physical Fitness. At the close of the hearing, the board will go into closed session for the purpose of arriving at initial recommended findings on whether the evaluee is fit or unfit to perform the duties of his office, rank, or grade. The recorder and counsel will not be present in the closed sessions. After making the initial recommended finding, the board will determine the diagnosis and severity of each physical defect noted which is considered permanent or may be permanent in nature. These defects will be placed in the following categories:

(1) *Disabling*—Any defect which in itself rendered the evaluee unfit to perform the duties of his office, rank, or grade.

(2) *Contributory*—Any defect other than a disabling defect which may be classed as permanent or may be permanent in nature.

b. Percentage of Physical Defects. Having categorized the physical defects as indicated in a (1) and (2) above, the board will determine the percentage for each physical defect in accordance with the standard schedule of rating disabilities in current use by the Veterans' Administration, whether the defect was due to the intentional misconduct or willful neglect of the evaluee, and whether the defect was incurred during a period of unauthorized absence of such evaluee.

The parties and their respective experts agree that the practice of the Air Force under the foregoing AFM 17 a and b and its predecessor regulations has at all times been, as indeed the plain language requires, that once a determination has been made by the Air Force that a member is "unfit to perform the duties of his office, rank, or grade", the Physical Evaluation Board—and this perforce applies equally to the ascending hierarchy of service retirement boards, including the Correction Board at the end of the administrative journey —"*will* determine the diagnosis and severity of *each* physical defect noted which is considered permanent or may be permanent in nature." [Emphasis supplied.] This is consistent with Wales v. United States, 130 F.Supp. 900, 132 Ct.Cl. 765 (1955). Just as this obligation of the service to make a determination as to each physical defect is mandatory in form, so is the further requirement of the regulation that all of the known defects be placed in the categories of "disabling" or "contributory", which categories together embrace permanent or potentially permanent service-incurred physical defects of all manner, whether unfitting for military duty or an impediment to civilian livelihood. Having thus slotted the disabilities as "disabling" or "contributory", the service will then under paragraph 17 b of 35–4 AFM "determine the percent-

1. The report of the late Commissioner Arens contained findings numbered serially 1 through 20 based on the record before him. The present report contains findings which are numbered commencing with finding 21 based on the record of proceedings on remand. Finding 20 should be stricken.

age for each physical defect in accordance with the standard schedule of rating disabilities in current use by the Veterans Administration", and this requirement is also couched in mandatory terms.

The distinction between the terms "disabling" and "contributory" as they are used in paragraph 17 a of AFM 35–4 is plain. A disabling defect is one which renders the member unfit to perform military duty. A contributory defect is one which is not disabling but which is, nevertheless, ratable under the VA Schedule, since it detracts from the "whole man" concept which is central to determinations under the VA Schedule. A contributory defect may not only interfere with the individual's ability to earn a living in civilian life, but may also affect his military performance although not enough to be disabling in itself. Thus a member who has no one defect which by itself disables him from military performance, may nevertheless be disabled from such performance by an accumulation of contributory defects of a ratable quality, and paragraph 17 c of AFM 35–4 requires that the service will find a percentage of disability as to each such contributory defect.[2] To be of ratable quality the defect need not affect military performance *per se*, since the VA Schedule of ratings is directed to capacity for civilian performance. The rating given a particular condition by the military service for retirement purposes may be zero unless the VA Schedule mandates a minimum rating, in which case the rating must be no less than the minimum (*infra*). All conditions ratable in the VA Schedule are deemed to contribute to unfitness, even where the rating is zero. Mross v. United States, 186 Ct.Cl. 165, 169 (1968).

In the present instance the dispute centers on the fact that, whereas the Veterans Administration in 1958 announced for plaintiff a combined disability rating of 50 percent as of the end of 1957 (up from 40 percent as of September 1953 when plaintiff was separated), later in 1958 the Correction Board found a disability rating of 20 percent at the time of separation, omitting any rating for plaintiff's shoulder scar with retained foreign body, a defect which the Veterans Administration had rated at 10 percent. Had the Correction Board rated this disability at 10 percent, as plaintiff contends it was required to do, he would have been entitled to a combined rating of 30 percent instead of 20 percent, and thus to disability retirement pay instead of severance pay under the Career Compensation Act of 1949. The Board found that "The scars and other mentioned defects [including by necessity the scar and retained foreign body in the right shoulder] obviously are not contributory to unfitness although they may be ratable under schedule." *Cf.* Lawler v. United States, 169 Ct.Cl. 644 (1965), finding 27.

The defendant contends that the Board was not required to rate plaintiff's shoulder condition because the scars were well-healed, non-symptomatic (WHNS), whereas VA Diagnostic Code 7804 under which the VA made a rating by analogy[3] of 10 percent relates

2. "c. Basis for Arriving at Findings. Since the disability of an evaluee may be comprised of one or more disabling defects; a combination of one or more disabling and contributory defects, or an accumulation of contributory defects; the determinations of the board with respect to physical defects, as outlined in a above, may be considered as preliminary steps necessary to the establishment of a basis for arriving at recommended findings with respect to the evaluee's disability. Accordingly, having identified the physical defects which constitute the disability, including all disabling and contributory defects, the board then will proceeding to make recommended findings with respect to the disability as follows:

\* \* \* \* \*

"(d) The percentage of disability in accordance with the standard schedule of rating disabilities in current use by the Veterans' Administration."

3. The VA Schedule is not all-inclusive in its listing of physical defects. As to

to "Scars, superficial, tender and painful on objective demonstration." Findings 5(d), 10, 11(a), 11(b), 12, 13(f) and 14(b) made by the previous trial commissioner, lend collective support to the VA finding of 10 percent disability under Code 7804, for while the right shoulder scar may not have been "tender or painful on objective demonstration" at the time plaintiff was examined by Dr. Genner just before trial (finding 17), there were both subjective and objective evidence and findings before the Board that it was the cause of complaints by plaintiff of pain and fatigue at various times since its inception, that it caused a residual weakness after continuous use of the arm, and even a finding at one examination that the right shoulder was "paralyzed on and off" and tired easily, although shoulder motions were normal. One of the reasons given by the Air Force in December 1957 for finding the plaintiff "medically disqualified for military service" was "residual weakness with occasional pain of the right shoulder and left lower limb", so it is difficult to reconcile the Board's rationalization that the plaintiff's shoulder condition, together with certain other scars, were "obviously * * * not contributory to unfitness although they may be ratable under the schedule."

■■ Since the Air Force was under the same obligation as the VA to resolve reasonable doubts of degree of disability in favor of the claimant,[4] it is reasonable to construe the Board's conclusion that the shoulder condition may have been ratable as amounting to a requirement that it should therefore have been rated, even though it may have contributed nothing to plaintiff's unfitness in the Board's judgment. Paragraph 3-54 of AFM 35-4 (June 4, 1970) authorizes a zero rating for listed conditions under the VA Schedule which

are so mild that they do not cause or contribute to unfitness for military service, except where the VA Diagnostic Code specifies a minimum rating which exceeds zero. There are two things wrong with this hypothesis, however. In the first place, the Board erroneously assumed that the criteria for plaintiff's fitness to be fitness for military service so far as the rating requirement was concerned, whereas the entire scheme of the VA Schedule which is the bible for ratings is devoted to fitness for civilian livelihood, and a physical defect should be ratable—and therefore rated—whether it contributed to military or civilian unfitness under the "whole man" concept. Also, the zero rating authorization in AFM 35-4 was promulgated in June 1970, long after the 1953 date of separation controlling this case, and no suggestion has been advanced that the zero rating authorization had earlier sanction. It may well be that military service requires a higher degree of physical fitness than civilian employment, so that a condition deemed not to contribute to unfitness for the one would contribute even less to the other. But this is mere speculation and has not been discerned as a principle or policy in the applicable regulations. One can conceive, furthermore, of many civilian employments that are demonstrably more arduous and taxing than many military assignments, such as professional athletes who are often deemed physically unacceptable for military servitude despite their remarkable cavorting on the field. At any rate, a disability or defect need not be unfitting for military service to be ratable under the VA Schedule, and it would be startling to believe that the shoulder impairment which was cited as one of two defects prompting the Air Force to declare plaintiff medically disqualified for mili-

conditions which are not specifically listed under diagnostic code numbers, paragraph 20 of the Schedule headed "General Policy in Rating Disabilty," authorizes the rating of such unlisted conditions by anal-

ogy under a closely related disease or injury.

4. Paragraph 3 of "General Policy in Rating Disability" chapter in the VA Schedule.

tary service in 1957 could be held by the Board in 1958 to be not worth a rating under the VA Schedule.

The Board's failure to rate the plaintiff's shoulder disability is rendered more inexplicable by the language of the VA Schedule, quoted in finding 19, that "deep penetrating wounds of relatively short track by * * * shrapnel fragment are to be considered as of at least moderate degree", even in the absence of debridement (*i. e.*, medicalese for surgical removal of lacerated, macerated, or contaminated tissue. Webster's Unabridged, 2d ed.) or of prolonged infection, provided there is a record of complaints of fatigue and pain after moderate use. The compliance of plaintiff's shoulder condition with this description is inescapable, despite the conflicting testimony of Dr. Genner recited in finding 17, which incidentally was not before the Board but was elicited at the subsequent court trial.

Thus we have a combat wound in plaintiff's right shoulder which the VA Schedule directs be rated as of an "at least moderate degree" of disability, and have left only the task of allocating the condition by permitted analogy to the diagnostic code number most closely related to its description, since no diagnostic code classification is precisely in point. The VA felt the closest analogy to be Diagnostic Code No. 7804 which is one of a series of conditions under the general heading of skin ailments. Dr. Pettibone, who testified for plaintiff at the trial here (finding 16(b) ), and who spent many years as a professional official of the Veterans Administration in adjudicating claims for physical disability under the VA Schedule, felt that plaintiff's shoulder condition should have been rated under either Diagnostic Code Number 5304 or 5305, pertaining respectively to injuries to the intrinsic muscles of the shoulder girdle or to the flexor muscles of the elbow. Whether the plaintiff's shoulder condition was more closely analogous to Diagnostic Code Number 7804, 5304, or 5305 happens to be immaterial, for in each instance the disability rating is fixed at 10 percent for a moderate degree of disability.[5]

The court could, of course, permit the parties to return to the Board to obtain a specific rating for the shoulder injury which it had in error failed to rate. Conceivably if that were done the Board might arrive at a zero rating, for the court's criticism of the Board's performance is only in its failure to apply a rating of any kind. If the issue were so remanded to the Board for determination, then in the normal course of events a ruling by the Board that did not meet with plaintiff's approval would in all probability revisit the court for review. However, in the pending case of Haber v. United States, Ct.Cl. No. 268–66, the court on December 3, 1971, returned the case to the trial commissioner to adjudicate a disability issue, instead of following the earlier recommendation of the trial commissioner for a stay of judicial proceedings pending redetermination by the Board in the light of evidence adduced in the court trial. As a practical matter from the standpoint of dispatch, the court's policy in the *Haber* case is a wholesome recognition of the shortness of life, the natural preference to reward a deserving suitor rather than eventually his estate, and the need to find the shortest distance between wrong and redress. The courts are strewn with Pyrrhic survivors of procedural masterworks.

In short, the Board's decision is not to be reversed because it lacked substantial evidence, but on the legal grounds of a procedural omission which unjustly deprives plaintiff of his deserts.

---

5. Code numbers 5304 and 5305 apply a rating of 10 percent to a moderate degree of disability from the described condition. Code number 7804 provides a flat rating of 10 percent to all conditions complying with the description.